Court of Chancery.  Kent.  February, 1820.

*Ridgely's Notebook III, 104.*

## STATE v. JOHN LOWBER.

High Court of Errors and Appeals.  June 8, 1820.

*Ridgely's Notebook III, 107.*

•  •  •  •

THE CHANCELLOR.  An indictment was found against John Lowber, one of the Justices of the Peace for Kent County, at the November Sessions, 1819, for altering a counterfeit bank note. It was tried at May Sessions, 1820, and Lowber was convicted by the jury, and the court passed judgment against him.  On an application made to this Court on the 8th instant for the allowance of a writ of error to be directed to the Court of Quarter

Sessions of the Peace, or for the order of this Court to be made on the Attorney General for his *fiat* for a writ of error, a preliminary question has arisen, which is, whether this Court has any jurisdiction in writs of error to be issued to the Court of General Quarter Sessions of the Peace and Gaol Delivery.

This question was argued by *Mr. Brinckle* on behalf of Lowber, in the absence of the Attorney General. In expectation that he would attend this Court by three o'clock P. M. on the 9th instant, the argument was postponed until that period. He did not attend; and after argument by *Mr. Brinckle,* the Court has taken time until this morning to consider the question.

By the eighth article of the constitution, this Court is created with power to issue writs of error to the Supreme Court and to the Court of Common Pleas, and to receive and determine appeals from the interlocutory or final orders or decrees of the Chancellor. No notice is taken of the Court of General Quarter Sessions of the Peace and Gaol Delivery, *eo nomine.*

The Act entitled "An Act for the better regulation of the Supreme Court within this government," passed in the year 1760, 1 Del.Laws 374, made the Supreme Court a court of error to hear and determine all pleas, plaints and causes removed or brought there from the Court of General Quarter Sessions of the Peace by writs of *habeas corpus, certiorari,* and writs of error. As this Act in this has not been specially repealed, the Supreme Court will have jurisdiction to grant the writ of error in the first instance, and not this Court, unless the Act is inconsistent with the constitution. We are of opinion that this Act, in relation to the writ of error, and we touch nothing else, is inconsistent with the constitution, and that it has been repealed thereby, so far as it respects the exercise of this jurisdiction by the Supreme Court.

The eighth article of the constitution gives to the High Court of Errors and Appeals the power to issue writs of error to the Supreme Court. If then the Supreme Court has the power to issue a writ of error to the Court of Quarter Sessions, this Court, by this provision, may issue a writ of error to the Supreme Court, and the consequence would be, that the same judges whose judgment had been reviewed by the judges of the Supreme Court would sit here to affirm or reverse their judgment. This would be great incongruity and contrary to the whole spirit of the judicial system. The power given to this Court to issue a writ of error to the Supreme Court is express and positive. When the Supreme Court has appellate jurisdiction from the Orphans' Court in cases where that court has original jurisdiction, it is declared that the decision of the Supreme Court shall be final,

Constitution, Art. 6, s. 15. So where an appeal is given to the Supreme Court from the Register's Court, there their decision is final, Constitution, Art. 6, s. 17; and consequently in those cases no writ of error can be issued by this Court to the Supreme Court. This is a case in which the decision of the Supreme Court, according to the "Act for the better regulation of the Supreme Court," would not be final; and it would be within the power given to this Court to issue writs of error to the Supreme Court, and, of course, the judges of the Court of Quarter Sessions, sitting in this Court, would review a judgment which had affirmed or reversed their own, which would be inconsistent with the constitution. We therefore think that the constitution has repealed that part of the "Act for the better regulation of the Supreme Court" which made the Supreme Court a court of error to review the judgment of the Court of Quarter Sessions.

Again, the eighth section of the Act to regulate the courts in this state, 2 Del.Laws 1088, never was designed to be applied to the removal of an indictment after judgment rendered in the Court of Quarter Sessions. It was intended merely to prevent the removal of indictments into the Supreme Court from the Court of Quarter Sessions before the trial of such indictments. Before that law was enacted, the Supreme Court by the Act, 1 Del.Laws 374, had power to issue a writ for the removal of indictments from the Court of Quarter Sessions into that court before trial; and to make the law in this respect more consonant to the constitution this Act was passed taking away this power. The fourth section is somewhat explanatory of the Act and seems to show that the whole of it was intended to prevent the removal of civil suits and of indictments before trial. If the section were applicable to the removal of indictments after judgment, it would take away the writ of error in all cases upon indictments in the Court of Quarter Sessions, for the Act speaks of writs of error, *habeas corpus,* and *certiorari* to be sued forth by any person or persons to stay or remove any indictment found or depending in the Court of Quarter Sessions, or thereafter to be found or depending, except for capital offences, without speaking of writs to be issued by the Supreme Court, or by this Court. It applies as well to this Court as to the Supreme Court. No particular court is restrained from issuing the writ. But the Court of Quarter. Sessions is required not to receive or allow any such writ. If it means a writ of error after judgment, how will the party remove the record into this Court? If this Court has jurisdiction in criminal matters, and the Act is applicable to the removal of indictments after judgment, the law is unconstitutional: if it was passed to prevent the removal of indictments before

judgment, the law is consistent and constitutional. This Act of Assembly has no bearing on the subject.

By the Act for establishing courts of law and equity within this government, 1 Del.Laws 121, s. 5, a writ of error is given to every person grieved by the judgment of the Court of General Quarter Sessions of the Peace and Gaol Delivery, to be granted of course, in manner as other writs of error were to be granted and made returnable to the Supreme Court. And so by the Act for the better regulation of the Supreme Court, 1 Del.Laws 374, ss. 2, 5, there is like provision made for writs of error. These sections, so far as they relate to giving the party a remedy to be relieved from an erroneous judgment of the Court of Quarter Sessions, have not been repealed by any subsequent Act; neither are they inconsistent with the constitution. The Justices of the Supreme Court cannot award the writ. But inasmuch as this Court is made a court of errors, all the remedy given to the party by the Acts before mentioned still remains to him and can be exercised by this Court, except in cases where that power has been vested in some other court. The party's remedy is as complete now as it was before the making the constitution, though it is to be exercised by a different tribunal.

It is evident from Mr. Reed's note d, 1 Del.Laws 124, and note f, 2 Del.Laws 1090, that he considered that this Court had jurisdiction in cases of writs of error directed to Court of Quarter Sessions.

In *The Case of Paine,* the jurisdiction of the Court was not questioned. *Stanburrough's Case* was a writ of error to the Supreme Court on an indictment for forcible entry and detainer, brought before the constitution went into operation. These cases are not authorities.

PER CURIAM. Let the writ be allowed, saving all exceptions as well to the form of the writ as of the right to prosecute the same.

Record received and filed.

NOTE. This writ had been issued May 22. It was sent to *Mr. Rogers,* the Attorney General, for his *fiat,* or application had been made to him for it, and he refused to grant it. In this way the writ came before the Court and laid the ground for the motion made the 8th instant. June 12, 1820, on motion of plaintiff's counsel, ordered that the Attorney General appear and plead by six o'clock P. M. on Wednesday (14th instant) next.

June 13, 1820, Tuesday, the Attorney General this day appeared and was willing to plead before the above rule was ex-

pirable, and thereupon he pleaded to the jurisdiction of the Court; upon which the plaintiff in error demurred to the plea to the jurisdiction of the Court. Joinder in demurrer.

*Mr. Rogers,* Attorney General. This case is presented on a plea to the jurisdiction of this Court. The plaintiff in error demurs to the plea. (Here at the instance of the Attorney General, the counsel for Lowber proceeded in support of their demurrer.)

*Mr. Brinckle,* for Lowber, in support of the demurrer. On general principles, reason [is] so strong in favor of [the] writ of error that slight grounds ought not to prevail against the writ.

First. This Court possesses jurisdiction in all cases inherently. The constitution makes this a Court of Errors and Appeals, which gives it authority in all cases not prohibited or vested elsewhere. Supreme Court and Court of Common Pleas [were] created and have jurisdiction in all cases, without any special limitation or designation of their authority. And so as to this case. In matters of error, where a right is given to party to sue, no necessity to say where he shall sue, for [the] constitution has given the Court authority.

Second. Constitution, Art. 7, s. 1, the expression, "Court of Common Pleas," includes the Court of Quarter Sessions, and this expressly gives the jurisdiction. ([NOTE.] Is it so as to Court of Oyer and Terminer?) The Judges of the Court of Common Pleas compose the Quarter Sessions. They are one and the same. If a judge sitting in Quarter Sessions should commit offense, he might be dismissed from office, although he would be impeached as Judge of Court of Common Pleas. Section 2 of Article 7, in civil causes the Court of Common Pleas may direct amendments. If they had said the judges of the Court of Common Pleas may direct amendments, it would have included the Common Pleas and Quarter Sessions, but civil causes confine the amendments to the Court of Common Pleas. One judge of Court of Common Pleas may open court. This applies to both courts. 2 Del.Laws 1088, Act to regulate courts; this Act does not expressly provide for the Court of General Quarter Sessions of the Peace, and if the terms here assigned do not apply to the Court of Quarter Sessions, they have done business irregularly. *Ibid.* 1192. The terms of the Court of Quarter Sessions [are] not included, and yet Quarter Sessions [are] held at same time. Last section of seventh article gives the Court of Errors and Appeals power to issue all process to bring

records before them. Constitution did not exclude the Court of Quarter Sessions, not being expressly excepted by name.

Third. We say, under the laws of this state, this Court has jurisdiction, because jurisdiction has been given. The legislature may add to the jurisdiction of a court, but cannot take away a jurisdiction given by the constitution. The legislature has constantly exercised the right of giving jurisdiction. 2 Del.Laws 1180, appeal given to High Court of Errors and Appeals,—to entertain appeals from the Land Commissioners. *Ibid.* 1324, petitions for freedom, appeal given to this Court. The power given to this Court is to issue writs of error to Common Pleas. Here an appeal is given, and yet the constitution does not give the power to entertain appeals from the Court of Common Pleas. So appeals are given to the Court of Common Pleas from Justices of the Peace; jurisdiction given on petitions for dower. 5 Del.Laws 224, this law gives express jurisdiction in this case. This, the Quarter Sessions, is a court of law, and of course jurisdiction is given to this Court (and so is jurisdiction in writs of error from Court of Oyer and Terminer). This question has been judicially decided in *The Case of Stanburrough*. *Paine v. State* was a writ of error directed to the Court of Quarter Sessions. (The jurisdiction of the Court was not questioned and was not considered by the Court.) 2 Del.Laws 1090, note of Chief Justice Reed to eighth section, "except writs of error," etc.; this is an expression of the opinion of Chief Justice Reed. Mr. Reed had a principal share in making the constitution.

*Mr. Rogers,* Attorney General. Writs of error in England are at the discretion of the crown. 4 Ves.Jr. 2071, writs of error in the discretion of the crown in criminal cases. This doctrine extends to misdemeanors only. If the allowance of the Court could have any effect, the writ issued irregularly, for the allocation ought to have been had before the writ was sent to the court below. If this is a writ of discretion issued by Court, I cannot imagine where they get their authority. Article 7, jurisdiction is not granted to this Court by the constitution. No express grant. Article 6, section 12, that security be taken on appeals or writs of error, or no *supersedeas*. These two articles and sections all point to civil actions. If it was designed to confer on Court of Appeals power to grant writ of error in criminal matters, it was of vast importance to go into the detail as to the effects of it. Would it suspend the judgment? Could security be given? If it had been intended to give the writ of error, and that it should suspend or not suspend the execution, there would and must have been great detail. If judgment is

reversed, is the case to go back for trial? ([NOTE.] No, might he not be indicted again after judgment and part of the judgment inflicted and judgment reversed? How is the future case to be proceeded in?)

Article 6, section 13, provision [of] time within which writs of error are to be brought. Would this length of time be given in criminal cases? (No.) Can the party take a bill of exception and put it upon the record to bring writ of error? There is no distinction between writs of error to Quarter Sessions and to the Court of Oyer and Terminer. The Act, 5 Del.Laws [234], confers no jurisdiction. *Stanburrough's Case* is no authority. In *Paine's Case* the question of jurisdiction was never mooted. 1 Del.Laws 124, s. 5, writ of error grantable to party aggrieved. The Supreme Court had the power to issue writ of error to Quarter Sessions. The remedy is gone. The Court of Quarter Sessions itself was abolished by the constitution. A new court was constituted by the constitution, but it was a new and different court. The Court of Quarter Sessions had more extensive power under the Act than the Court of Quarter Sessions under the constitution. The Justices of Peace composed Quarter Sessions. Other judges now compose Quarter Sessions. The remedy was lost with the abolition of the court. ([NOTE.] So all power given to courts and all jurisdiction to the different courts erected by the Acts of Assembly are abolished and gone, the courts being newly created by [the] constitution. Is this correct?) 2 Del.Laws 1090, s. 8, passed June 14, 1793, no writ of error etc. for removal of any indictment. This Act abolishes the writs of error given to [a] party in 1 Del.Laws 124, 375, 2 Del.Laws 1091, fixing High Court of Errors and Appeals to hear causes coming from Supreme Court, Court of Common Pleas, and Court of Chancery. Jurisdiction cannot be taken by implication.

*Mr. Clayton.* No part of the constitution designates the jurisdiction of any of the courts. The courts are merely created. (You are to refer to the nature of the courts and to the Acts of Assembly previously existing to ascertain their jurisdiction.) The jurisdiction of the Quarter Sessions is not defined by the constitution. Then, according to the argument of Attorney General, the Quarter Session has no jurisdiction. ([NOTE.] See 4 Binn. 424, that writ of error to Mayor's Court must have the allowance of a judge or consent of the Attorney General. See there the construction of Act of Assembly similar to our Act, 1 Del.Laws [121, 374].) 4 Burr. 2550, writ of error not *ex gratia*, if probable error. Chit.Cr.L. 749, same point.

*Mr. Rodney* for Lowber.

Court adjourned till 14th.

On June 14th THE COURT delivered the following opinion:

First, we are of opinion that the eighth section of the Act to regulate the courts in this state, 2 Del.Laws 1088, does not take away the writ of error to the Court of General Quarter Sessions of the Peace and Gaol Delivery, after judgment rendered in that court.

Second, that the Act of Assembly entitled "An Act for the establishing courts of law and equity within this government," 1 Del.Laws 121, s. 5, and the Act entitled "An Act for the better regulation of the Supreme Court within this government," 1 Del. Laws 374, so far as those laws gave to the party supposing himself aggrieved by a judgment of a Court of Quarter Sessions of Peace and Gaol Delivery a writ of error, are still in force as to all cases not capital.

Third, that the constitution, by creating this Court a court of error, has given it power to issue the writ of error to the Court of Quarter Sessions in those cases in which the party is entitled to the writ by the Acts of Assembly before mentioned.

Fourth, that the expression in the seventh section of the constitution, that this Court shall have power to issue writs of error to the Supreme Court and to the Court of Common Pleas, do not, *ex vi termini,* mean the Court of Oyer and Terminer, and the Court of General Quarter Sessions of the Peace and Gaol Delivery.

Fifth, that the writ of error may be issued by this Court to the Court of General Quarter Sessions of the Peace, as before mentioned, on the *allocatur* of a judge of this Court upon showing him that there is probable error, or on the *fiat* of the Attorney General.

Sixth, that no writ of error can be issued by this Court to the Court of General Quarter Sessions and Gaol Delivery in any capital case of which that court has jurisdiction, but by the *fiat* of the Attorney General. That the Court has jurisdiction in the case now before the Court.

Judgment was entered thus. On argument, it is considered by the Court that the demurrer be allowed and the plea overruled.

NOTE. The Court was of opinion that the writ of error lies to the Court of Oyer and Terminer, by the common law, on the *fiat* of the Attorney General.

After the Court had delivered their opinion sustaining their jurisdiction in this case, the counsel for Lowber called on the

Attorney General to plead to the assignment of errors. It was objected that the record was not before the Court, that it had not been certified by the Justices of the Court of General Quarter Sessions of the Peace and Gaol Delivery under their seals; but that the record in this court comes up certified by the clerk of the Court of Quarter Sessions under the seal of that court. The writ commanded the Justices to certify under their seals, whereas they did not, nor did any of them certify the same. . . .

*Mr. Rodney.* The Attorney General, by appearing and pleading, admits the record to be before this court properly authenticated. If there were any irregularity in the process or return the Attorney General should have taken advantage in the first instance. Tidd Pr. 90, if process be defective, but party appears and takes subsequent steps, he cannot revert back and take advantage of the irregularity. Here the attorney has appeared and pleaded to the jurisdiction of the court, and judgment on the plea. 3 Cranch 496, appearance of defendant by attorney cures all irregularity of process. 4 Cranch 180, appearance of defendant in error waives all irregularity. A writ of Error secured before its return day may be returned after the day on which it was returnable.

*Mr. Rogers,* Attorney General. Here Judge Warner, one of the Justices of the Court of Quarter Sessions, signed and sealed a certificate certifying the same record which the clerk of the peace had certified under the seal of the court. And further he stated that on this day, the 14th, he was requested to certify the said record. . . .

PER CURIAM. The record is sufficiently before the Court, it being certified under the hand and seal of one of the Justices of the Court of Quarter Sessions.

The Attorney General then pleaded, *in nullo est erratum.*

The following is an abstract of the Assignment of Errors:

I. Want of names of persons intended to be defrauded.
II. Bad, either at common law or by statute for other reasons.
  1. By statute. Does not follow the statute.
    (1.) No averment that the note was forged with intent to defraud.
    (2.) No averment of incorporation.
    (3.) Note not under seal.
    (4.) Variance in judgment.
      a. Dimensions of letter F.
      b. Penalty for not wearing letter F.

    2.  At common law.
       (1.)  Note not under seal.
       (2.)  Bank not incorporated.
       (3.)  Perhaps bank alone intended to be injured.
       (4.)  Not common-law punishment.
          a.  Wearing letter F.
          b.  Penalty for omitting to wear letter F.
    3.  One judgment for two distinct offenses.
    4.  Judgment under statute, one count at common law. . . .

PER CURIAM. We have not time to go through the whole case. We will take the prominent parts of the indictment and judgment and confine ourselves to them. There is no judgment upon the common-law count in this indictment, and therefore we shall proceed upon the count under the Act of Assembly, upon which, we are of opinion, first, that the indictment has not well described the bank note said to be forged in omitting to state that it is the note of an incorporated bank, and in omitting to state that the note was forged with the intent to prejudice some person or body corporate, according to the words and meaning of the Act of Assembly. Second, the judgment is erroneous in not giving or directing the dimensions of the letter F. These we think are sufficient for the reversal of this judgment. The addition made to the judgment in prescribing the duty of the constables and justices of the peace is not matter of error and is void.

The judgment was entered in the following form:

    And now, to wit, this 16th June, 1820, this cause being argued by counsel, whereupon all and singular the premises being seen and by the Court here understood, it is considered (by the Court) that the judgment aforesaid be reversed, annulled and altogether held for nothing, and that the said John Lowber be restored to all things which he hath lost by occasion of the said judgment, and that the said John Lowber go thereof without day.

---

## NOTE.

The judgment rendered in the Quarter Sessions was entirely under the Act of Assembly, except that it did not prescribe the size of the letter F. It is evident by a comparison of it with the Act that the Court did not intend this, or any part of it, as a judgment at common law. If the count at common law had

been good, and the judgment had been partly by the common law and partly by the Statute, then it might have been reversed in part and affirmed in part. See 1 Salk. 24.

In indictments the Court will give judgment in that part which is good. 2 Burr. 985, *vide* 2 Ld.Raym. 1094. See 4 Burr. 2018, where there were two distinct judgments, and one affirmed and one reversed. If the legal judgment on each count is different, can they be joined? See 3 Term 98. It is no objection that an indictment contains several charges of the same nature in the different counts, and after trial it is not an objection in arrest of judgment that the indictment contains separate offenses, 3 Term 98.

The opinion of the Court delivered the 14th June is too much confined to the remedy given by the Acts of Assembly to persons aggrieved by the judgment of the Quarter Sessions. The common law is the law of the land; and in all cases the party is entitled to the common-law remedy, where it has not been altered by the constitution, or by the Acts of Assembly. The Court of General Quarter Sessions of the Peace and Gaol Delivery, established by the constitution, acts according to the common law. Its authority is not restricted to cases arising under the Act of Assembly, but it has jurisdiction over offenses at common law. It is a court of record because it can convict, fine and imprison. 12 Mod. 388, Salk. 200, 3 Bl.Comm. 24, 25, 1 Bac.Abr. 559, title, "Courts" (D).

Error lies of any judgment in a Court of Record. 5 Com.Dig. 700, title, "Pleader" (3B7). Upon a judgment rendered by any judge or court of record which acts according to the course of common law, though newly created by Act of Parliament, a writ of error lies. 1 Salk. 263, 266, 12 Mod. 390. So where a new offense is created and directed to be tried in an inferior court established according to the course of the common law, such inferior court tries the offense at common law, subject to be removed by writ of error, *habeas corpus, certiorari,* and to all the common-law proceedings. Cowp. 523, 524. It seems then that a writ of error lies to the Court of Quarter Sessions independent on the Acts of Assembly, according to the course of the common law.

The High Court of Errors and Appeals alone can issue such writ. The Supreme Court cannot, because their judgment might be reviewed by the High Court of Errors and Appeals, composed of the Chancellor and Judges of the Court of General Quarter Sessions of the Peace. And it would be impertinent that the Judges of the Court of Quarter Sessions should, in effect, af-

firm or reverse their own judgment, as they might on a writ of error to the Supreme Court. See Dyer 158, Cro.Car. 127, 128, 1 Bac.Abr. 557, title, "Courts" (C). A writ of error, by the express words of the constitution, lies to the Supreme Court, except where their judgment is final, as on appeal from the Orphans' Court where that court has original jurisdiction, and on appeal from the Register's Court. The High Court of Errors and Appeals has all the incidents of a court of error, and may issue a writ of error to any court of common law jurisdiction. *Vide* 3 Com.Dig. 328, title, "Courts" (P. 4.), 1 Salk. 408, 1 Bac.Abr. 565, title, "Courts". It has succeeded to all the power formerly given to the Supreme Court as a court of error; and to the Court of Appeal created by the Constitution of 1776. The powers or jurisdiction of the Court of Chancery, of the Court of Common Pleas, and of the Court of Quarter Sessions, are no more defined by the constitution than the powers of the High Court of Errors and Appeals, and yet they all respectively exercise, and rightfully too, all the powers which ever did belong to those courts, except in cases where such powers have been assigned to other tribunals; and so may the High Court of Errors and Appeals. Unquestionably, Chief Justice Read (see note d, 1 Del. Laws 124, and note f, 2 Del.Laws 1090) was of opinion that the High Court of Errors and Appeals might issue writs of error to the Court of General Quarter Sessions of the Peace.

In capital cases, such writs cannot be issued to that court, because the Acts of Assembly never gave such writs, and because the party was not entitled thereto but by the *fiat* of the attorney at common law. That court, though, has no jurisdiction in capital cases, except over negro slaves.

Mr. Rogers, the Attorney General, said in this cause, after the opinion of the Court had been delivered, that a writ of error would be a *supersedeas*. I hastily said that I did not believe the law was so. Afterwards I retracted publicly, in court, that opinion, having seen some cases which induced me so to do. The following authorities seem to warrant my retraction. Where the party cannot be restored to all that which shall be lost by the execution, (if it be made) when the judgment is reversed, then the writ of error shall be a *supersedeas* of the execution (at what time so ever it be brought as it seems intended), because otherwise it will be mischievous. 20 Vin.Abr. 66 pl. 1, cites 7 Hen. VI, 29. As if a juror be attainted in a writ of attaint, a writ of error shall be a *supersedeas,* because he cannot be re-

stored to that which he shall lose if the execution be made. 20 Vin.Abr. 66 pl. 2, cites 7 Hen. VI, 29.

The same law is in writ of error upon an attainder of felony, 20 Vin.Abr. pl. 3, cites 7 Hen. VI, 29. When one is in execution, they cannot supersede it by error, but he must continue committed, else there would be no remedy to bring him into custody in case the judgment should be affirmed; but on an *audita querela,* the party is discharged by bail because this is a new suit, and the party is never to be taken again. 20 Vin.Abr. 67 pl. 7, cites 2 Keb. 43, pl. 88; *Pasch.* 18 Car. II, B.R.,[1] *The King v. Whitmore.* In the marginal note he cites Sid. 286 pl. 23, same case, and gives it thus: The party was in execution at the suit of the King upon a conviction on an indictment in the Quarter Sessions for deer-stealing and breaking parks, so when persons were fined to the King at the Sessions and in execution for it, and brought *habeas corpus* and a writ of error, the court would not bail them, because they are in execution for the King; but it was said that it is usual in the Crown Office to bail in such case, Sid. 320 pl. 10; Hil. 18 and 19, Car. II, B.R.,[2] *The King v. Marscull et al., Inhabitants of Lyme House.* Siderfin agrees with this marginal note. (See 15 Ves.Jr. 182, where it is said by Lord Eldon that in criminal proceedings a writ of error does not delay the punishment, March 16, 1826.)[3]

A writ of error is a *supersedeas* to the issuing of execution from the delivery of the writ till the day of return be past; but then, if the plaintiff proceeds not to the removal of the record, execution shall be granted for his delay; but a *certiorari* is a *supersedeas* from the time of the delivery thereof forever, unless a *procedendo* issues. 2 Hale P.C. 213, (he cites 21 Hen. VI, c. 28, Dyer 245a.) See Hob. 116. Execution may be awarded after the day of the return of writ of error, no suit being made by plaintiff in the writ of error for the certificate of the record, which is the default of the plaintiff. But if writ of error is brought for mere delay, the court below will stay execution. 1 H.Bl. 432, 4 Term 436. These last cases, Dyer, Blackstone, Term, are in civil cases.

---

[1] That is, Easter Term, 18 Car. II, *Banca Regis* (King's Bench).

[2] That is, Hilary term, 18 and 19 Car. II, *Banca Regis* (King's Bench).

[3] The words within the parentheses are written in different ink, and must have been added some years after the body of the note.